# TERRITORY OF HAWAII v. EDWARD S. BOYD.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED APRIL 5, 1905.    DECIDED APRIL 14, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT IN
PLACE OF WILDER, J.

EVIDENCE—*embezzlement.*

Upon a charge of embezzlement from the land office a witness
for the prosecution on cross-examination testified that he was
"then under indictments for embezzlement from the land office."
On objection that the indictment was the best evidence defendant
was not allowed further to ask the witness whether he knew
"what period of time he was charged with having committed the
embezzlement." When the evidence for the prosecution had
closed the defendant called the clerk of the court to testify
whether he had on his file indictments against the witness. Upon
objection that the evidence was incompetent unless the defendant
could show that there was an indictment "for this offense" the
defendant said that his purpose was to "show that the witness
was under indictment for the same offense at the same time, the
abstraction of funds the same as the defendant here," meaning, as
this court infers, the same class of offenses.

Held: The defendant was not prejudiced by the refusal of the
court to allow the question, since a showing of the same time laid
for the charges would not justify the inference that they were
the same embezzlements.

The defendant on cross-examination identified an exhibit shown
to him as in his own hand writing except a statement on the
back of it, which was in the hand writing of his clerk, and testi-
fied that he thought he gave it to his clerk "as a code for a tele-
gram between me and him." The writing on the back of the
exhibit was a statement that the code was intended for the reason

that the defendant "is about to go to Hawaii, and if during his absence my books should be experted I have to telegram to him as per directions." Held: There was no prejudicial error in the admission of the exhibit or in the refusal of the court to strike out the writing upon the back of it, which had no particular significance, being evidently the same explanation which the defendant himself gave of the inner portion of the exhibit.

The defendant had been interrogated on cross-examination concerning certain writings shown to him and subsequently marked for identification. Held: The refusal of the court to require the prosecution to file the writings in evidence was not error.

The verdict was justified by the evidence as the defendant by not claiming otherwise in his brief or argument tacitly admits.

ID.—*validity of Territorial enactments providing for a third judge of circuit court of first circuit.*

Held: The power impliedly granted by the Organic Act to the Territorial legislature to enact laws "concerning the several courts" and "relative to the judicial department" is broad enough to include the power to add one judge to the two judges of the first circuit court.

OPINION OF THE COURT BY HARTWELL, J.

The indictment on which the defendant was tried and convicted charges that on September 29, 1900, the defendant, being an officer of the Territory employed in the office of the commissioner of public lands, and by virtue of his office and employment being a public accountant charged with the duty of collecting and receiving revenue and other moneys on account of the Territory, and then and there entrusted with and having possession, control, custody and keeping by virtue of said office and employment of $2,500, the money of the Territory, then and there feloniously did embezzle and fraudulently convert and dispose of said money to his own use and benefit without the consent and against the will of the Territory, the owner thereto entitled. Two other counts were in the indictment charging embezzlement of $675 and of $1,552.50 March 6, 1901. By order of the court upon defendant's motion the following bill of particulars was filed:

. "First count.   September 29, 1900, $2,500 paid E. S. Boyd, sub-agent fifth land district, by Haiku Sugar Co. in payment of six months' rent, in advance, to March 30, 1901, under general lease number 475, water right, Maui.

"Second count.   March 6, 1901, $675 paid E. S. Boyd, sub-agent fifth land district, by Kaneohe Ranch Co. as rent on lease number 520, Kaluapuhi and Halekou from January 1, 1900, to July 1, 1901.

"Third count.   March 6, 1901, $1,552.50 paid E. S. Boyd, sub-agent fifth land district, by Hamakua Mill Co. in payment of rent on lease number 526, between Opihihala and Paauilo, from November 18, 1899, to May 18, 1901."

The defendant's bill of exceptions presents exceptions,

1.   To the refusal of the court on objection by the attorney general to allow the clerk of the court, sworn as a witness for the defense, to answer the question, "Have you on your file indictments in the case of the Territory of Hawaii against Solomon Mahaulu?" meaning Stephen Mahaulu who had been a witness for the prosecution.

2.   To the introduction in evidence by the prosecution on cross-examination of the defendant of Exhibit R, which, as stated in the defendant's brief, "was claimed to be a telegraphic code for use between the defendant and the witness Mahaulu and as such may be considered material evidence, but on the back of the document appears a memorandum made by Mahaulu unknown to the defendant."

3.   To the denial of the defendant's motion to strike out from Exhibit R Mahaulu's memorandum, on the ground that it was the statement of another person than the defendant whose interpretation could not be binding upon the defendant.

4.   To the denial of the defendant's motion that the prosecution place in evidence certain papers concerning which the defendant on cross-examination had been asked to make explanations, and which upon the request of the attorney general were marked for identification but were not offered or filed in evidence.

5. Exception to the verdict as contrary to the law and the evidence.

6. Exception to the denial of the defendant's motion in arrest on the following grounds, namely: (1) "That the act approved April 30, 1901, entitled 'An act to amend section 30 of chapter 57 of the Session Laws of 1892' is and was null and void. (2) That section 7 of the act approved April 22, 1903, entitled 'An act to amend chapter 57 of the Laws of 1892, entitled An act to reorganize the judiciary department,' etc., is and was contrary to section 81 of the Organic Act of the Territory of Hawaii, and therefore null and void. (3) That the conviction of the defendant by a court constituted of only one judge of the circuit court of the first circuit, to wit, Hon. W. J. Robinson, third judge thereof, was and is contrary to section 81 of said Organic Act."

7. To the denial of defendant's motion for new trial on the grounds that the verdict of the jury was against the law and the instructions and the weight of the evidence and for errors of law upon the trial in the court permitting the introduction of testimony objected and excepted to by the defendant, which objections and exceptions were noted by the stenographer.

Upon Exception 1 it is claimed by the prosecution that its witness Mahaulu could be discredited in no other way than is provided by section 1955, R. L., viz.: "A witness may be questioned as to whether he has been convicted of any indictable or other offense; and upon being so questioned if he either denies the fact or refuses to answer, it shall be lawful for the party so questioning to prove such conviction." The statute does not cover this point. The law permits the discrediting of a witness by showing, either by cross-examining him or by any other competent evidence, that he is under indictment for the same offense, so that the only question here is whether in view of the admission made by the witness on his cross-examination that he was under indictments for embezzlement from the land office the court properly refused to allow the indictments against him to be shown by the clerk of the court. The transcript

shows that on cross-examination the witness Mahaulu was asked, "You are at present under indictments for embezzlement from the land office of funds?" to which the witness answered, "Yes sir." When the witness was further asked, "Do you know what period of time that you are charged with having committed the embezzlement?" the prosecution objecting that "the best evidence is the indictment," the objection was sustained. The further question, "Do you know with what you are charged in those indictments?" was ruled out on objection that it was not the best evidence. It appears further that the objection made by the prosecution to the question asked of the clerk concerning indictments on file against Mahaulu was that the evidence was "incompetent, irrelevant and immaterial unless defendant can show there was an indictment against Mr. Mahaulu for this offense." To the question asked by the court, "What is the purpose of the question?" the defendant's attorney answered, "The purpose of the question is to show that Stephen Mahaulu is under indictment for the same offense at the same time, the abstraction of funds the same as the defendant here," by which we infer that he meant the same class of offenses. The indictments were evidence of their contents, but the witness sought to be impeached by showing them had admitted in cross-examination everything which his attorney sought to show by the indictments, except that they charged the embezzling by the witness as having been done at the same time in which the defendant was charged with embezzling.

We do not consider that the defendant was prejudiced by not showing that the time laid for the witness' embezzlement was the same as that laid for his own, having already shown that the two were under indictment for embezzling from the same office, since a showing that the same time was laid for the charges would not justify the inference that they were the same embezzlements.

As to Exceptions 2 and 3 relating to Exhibit R, the inner portion of the exhibit is as follows:

| "Intention | Telegram. |
|---|---|
| Should auditor come in to check, and if no questions asked everything O. K. | Received mail—no reply required. |
| If checking satisfactory. | Received mail—will reply. |
| If anything turns up and they doubt your explanation. | Received mail—reply unnecessary." |

The back of the exhibit contained the following:

"This is intended for this reason. Mr. Boyd is about to go to Hawaii and if during his absence my books should be experted I have to telegram to him as per directions."

When the exhibit was shown to the defendant on cross-examination he was asked if he had ever seen it before or had written any part of it. His answer was "Yes sir, I received—I did this." The objection first made by the defendant to its admission was that all the writing had not been submitted to the witness, whereupon the prosecution asked him, "Didn't you see the whole thing, Mr. Boyd, both sides?" Answer, "Yes, I seen it." It was then received in evidence, defendant objecting to it solely on the ground that it was "not in any way connected with this case; * * * neither addressed to anybody nor dated." The court then recalled its ruling and the defendant was asked, "When was that given, written out by you?" to which he answered that he thought it was before the extra session of the senate, between March, 1901, and the fall of 1902. The defendant then objected that the paper "had no connection with this specific case; * * * no reference made there to the counts charged in this bill of particulars, and it is not even shown that they occurred during the period." The defendant then testified, "I think I gave that to Mr. Mahaulu as a code for a telegram between me and him" when the defendant was commissioner of public lands and Mahaulu was his chief clerk. He identified the inner writing as his own and the writing on the back as Mahaulu's, whereupon the exhibit was admitted in evidence, and the defendant's motion that the last portion be struck out was refused. The writing on the back of the exhibit in the hand-writing of Mahaulu, as testified by the defendant, has no

particular significance, being evidently the same explanation which the defendant himself gave of the inner portion of the exhibit, namely, a private code for telegraphing between the two. We see no prejudicial error in the admission of the exhibit or in the refusal of the court to strike out the writing upon the back of it.

In order to sustain Exception 4 it would be necessary to hold that a witness for the defendant cannot be cross-examined concerning writings which are shown to him and subsequently marked for identification unless they are filed and made evidence. The law does not require this to be done. If the witness deny knowledge of the writings or otherwise fail to prove them they do not, by reason of his testimony, become evidence. Whether he admits or denies his previous knowledge of them, or that they are genuine wholly or in part, or otherwise testifies concerning them, he can be re-examined upon his testimony without making the writings his own further than he had already done in cross-examination.

No errors have been found in the rulings at the trial. The verdict was justified by the evidence as the defendant, by not claiming otherwise in his brief or argument tacitly admits. Therefore we cannot sustain Exception 5 to the verdict as contrary to law and evidence.

Exception 6 is based on the claim that the third judge of the circuit court of the first circuit is an unconstitutional judge, and that Act 19, Session Laws of 1901, and section 7 of Act 32, Session Laws of 1903, are invalid, the former amending section 30, chapter 57 of the Session Laws of 1892, by enacting that "the circuit court of the first circuit shall consist of three judges" (instead of two judges as formerly), "who shall be styled first, second and third judges respectively of the circuit court of the first circuit, either of whom may hold the court," and the latter act further amending said section 30 as amended by said Act 19 by enacting, "There may be one or more sessions of the court at the same time, and each session may be held by one but not more than one of the judges. The judg-

ments, orders and proceedings of any session held by any one of the judges, shall be as effective as if only one session were held at a time." The contention of the defendant is that the Territorial legislature has no power under the Organic Act "to make provisions for the establishment, organization or modification of the courts established" by the Organic Act, which in section 81 provides that the "judicial power of the Territory shall be vested in one supreme court, circuit courts, and in such inferior courts as the legislature may from time to time establish." This language, says the defendant, "is evidently modeled upon article 3, section 1 of the Constitution of the United States, by which it is provided that 'the judicial power of the United States shall be vested in one supreme court and in such inferior courts as the Congress may from time to time ordain and establish.'" To sustain this view the defendant cites *U. S. v. Union Pac. R. R. Co.,* 98 U. S. 569, 603, in which the court said: "With the exception of the supreme court the authority of Congress in creating courts and conferring on them all or much or little of the judicial power vested in the United States is unlimited by the Constitution" meaning, as counsel contend, that "where the Constitution itself establishes a court, the legislature of the nation could make no provision inconsistent with the provisions of the Constitution relating to such court." In view of the importance of the question we quote fully from the defendant's brief on the subject, viz.:

"In the Organic Act, however, the details of organization of the courts established by the act, and specially named therein, were not committed to the legislature of Hawaii, but the existing courts of the Republic of Hawaii were adopted by said act, except that the number of circuit judges outside of the first circuit was increased. While, therefore, Congress was by the Constitution given unlimited power to ordain and establish any courts which, in its wisdom it might deem necessary, subject only to the provision that there must be a supreme court, the Organic Act gives similar unlimited power to the Territorial legislature to establish all courts which it may deem necessary, provided that there must be a supreme court and circuit courts. In the former case the Constitution itself ordained and estab-

lished the supreme court; in the latter case the Organic Act itself ordains and establishes a supreme court and circuit courts.

"It goes without saying that only the power which establishes has the right to modify. Otherwise a tribunal established by competent authority becomes, from the instant of its creation subject not to that authority but to the authority of another or an inferior power. If the Territory of Hawaii can change the organization of the circuit court, as established by Congress in adopting the existing judicial machinery of the former Republic, by providing one additional judge, it has of course the right to provide a hundred additional judges. * * *

"A *reductio ad absurdum* arises if the power of the legislature to add to the number of judges be admitted, in that the correlative power must also be conceded to exist of reducing the number of judges, whereby a judicial officer appointed by the President and confirmed by the senate of the United States would be legislated out of office by the Territorial legislature."

The Organic Act in requiring the Federal court "to consist of one judge," that "the supreme court shall consist of a chief justice and two associate justices" and that "the President shall nominate and by and with the advice and consent of the senate appoint the chief justice and justices of the supreme court" (and) "the judges of the circuit courts" would not permit the legislature to increase or lessen the number of the justices of the supreme or Federal court. It is certainly subject to this limitation that section 81 of the Organic Act implies that the legislature may enact laws otherwise than was provided by the laws of Hawaii theretofore in force "concerning the several courts and their jurisdiction and procedure." The implied meaning of the provision that "the laws of Hawaii relative to the judicial department, including civil and criminal procedure except as amended by this act are continued in force subject to modification by Congress or the legislature" is that the legislature may modify those laws in some respects which do not change the numbers of the justices of the supreme and Federal courts. The power to enact laws "concerning the several courts" and "relative to the judicial department" is broad enough, as we think, to include the power to add one judge to the two judges of the first circuit. This does not necessarily imply a power to

lessen the number of judges or to repeal the laws by which the circuit courts existed. If the legislature should by enactment prescribe more circuit judges than in the opinion either of the President or the senate were appropriate or requisite for the needs of the Territory, such enactments would readily be nullified either by a failure or refusal of the President to appoint or of the senate to confirm the appointments, if not also by a failure of Congress to appropriate money for their salaries. As far as the validity of the appointment of the third judge of the first circuit is concerned, we coincide in the opinion of Attorney General Knox upon this very question (23 Ops., 544), that "Congress has in fact authorized the legislature to increase the number of judges."

Exceptions overruled.

*Attorney General Andrews* for prosecution.

*A. G. M. Robertson* for defendant.